# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM R. WEHRS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07 C 3312 |
| | ) | |
| BENSON YORK GROUP, INC., n/k/a | ) | Judge Joan H. Lefkow |
| NEW CASTLE FINANCIAL SERVICES, LLC, | ) | |
| KEVIN BRENNAN, KEVIN WELLS and | ) | Magistrate Judge Cole |
| NORTH AMERICAN CLEARING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, William R. Wehrs, has filed a five-count complaint seeking damages from his former securities broker, Benson York Group, Benson York's employees, Kevin Brennan and Kevin Wells, and Benson York's clearing broker, North American Clearing, Inc. ("NAC") (collectively, "defendants"). Wehrs alleges that defendants are liable for violations of both Section 10b of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, as well as for common law fraud, negligence, and breach of fiduciary duty.

The only claim brought against NAC is a claim for breach of fiduciary duty (Count V). NAC has filed a motion to dismiss Count V for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). For the following reasons, the court grants NAC's motion to dismiss [#16].[1] Count V and NAC will be dismissed from this case without prejudice.

---

[1] The court has jurisdiction over this case under 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331 and 1367.

**I.     Facts**

The following facts are taken from Wehrs's complaint and are accepted as true for the purpose of this motion to dismiss. On June 23, 2005, Wehrs placed an order with Wells to purchase on margin 4,000 shares of Cyberonics, Inc. at $43.75 each.[2] Instead, on June 24, 2005, without Wehrs's knowledge, consent, or authorization, Wells purchased on margin 4,100 shares of the stock at $46.99, charging a commission of $9,553.00. On June 27, 2005, Wells sold the stock at $44.33, charging Wehrs a $100 commission fee. Later that same day, again without authorization, Wells repurchased on margin all 4,100 shares of the stock at $44.33, charging a commission of $8,979.00. NAC served as the clearing house for both purchases.

After learning of the unauthorized transactions, Wehrs contacted Wells, who promised Wehrs that his losses would be remedied. When that did not happen, and because the Cyberonics stock was steadily decreasing in value, Wehrs contacted NAC directly and asked it to sell the stock. NAC refused, stating that any order to sell had to be placed by Benson York. The majority of the Cyberonics shares held in Wehrs's account have now been sold on margin call by NAC.[3] The current value of Wehrs's account at Benson York is less than $5,000, and Wehrs has suffered losses in excess of $92,000.00.

---

[2] To purchase "on margin" means to borrow a portion of the purchase price of the stock from the broker. *See* Margin Trading: What is Buying on Margin? http://www.investopedia.com/university/margin/margin1/asp.

[3] If an investor's equity in his account falls below a certain required maintenance margin (such as 50%), the broker issues a "margin call," which requires the investor to either liquidate some of his stock or to add cash to his account. If the investor does not answer a margin call, the broker has the right to sell his securities until the account reaches the maintenance margin. *See* Margin Trading: The Dreaded Margin Call, http://www.investopedia.com/university/margin/margin2.asp.

## II. Legal Standard Applicable to Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999); *but see Bell Atlantic Corp.* v. *Twombly*, – U.S. –, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

## III. Discussion

### A. Choice of Law

Wehrs invokes the court's supplemental jurisdiction over his common law claims, including the breach of fiduciary duty claim at issue here. *See Houben* v. *Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002) (citing *Felder* v. *Casey*, 487 U.S. 131, 151, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1998)) (finding that the *Erie* doctrine applies to state law claims brought in federal court on the basis of supplemental jurisdiction). Neither party addresses the choice of

law issue. Where the parties fail to raise a choice of law issue, the question is one of procedure: whether the court will address an issue that the parties have chosen not to address. *Wood* v. *Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991); *Matter of Iowa R. Co.*, 840 F.2d 535, 543 (7th Cir. 1988). "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Wood*, 942 F.2d at 426. But if the parties agree that a different law applies, the court will not raise the issue *sua sponte*. *Id.*

In briefing this motion, both parties rely heavily on cases decided by the district courts of New York. Wehrs cites only *Faturik* v. *Woodmere Sec., Inc.*, 442 F. Supp. 943 (S.D.N.Y. 1977), for the substance of his argument that he has properly stated a claim. NAC does not argue that some other law should apply but rather addresses *Faturik* on its merits. Because neither party disputes the applicability of New York law, the court will apply it in resolving this motion. *See Wood*, 942 F.2d at 426; *Casio Inc.* v. *S.M. & R. Co.*, 755 F.2d 528, 530-31 (7th Cir. 1985).

**B.     Breach of Fiduciary Duty**

Wehrs's breach of fiduciary duty claim against NAC alleges that NAC "breached the high fiduciary duties owed to [Wehrs], in that [NAC] administered [Wehrs's] account in a manner that was unprofessional, unreasonable and in direct contravention of its legal and ethical responsibilities." Complaint at ¶ 52. It continues, "[NAC] acted with the intent to defraud [Wehrs], or with such willful and reckless disregard for the interests of [Wehrs] as to be tantamount to an intent to defraud [Wehrs]." Complaint at ¶ 53. In his response to NAC's motion to dismiss, Wehrs characterizes this claim as follows:

> In the present case, [Wehrs] alleged that a series of unauthorized trades were made to his account by Benson York Group, Inc. [Wehrs] alleged that he spoke

4

> with the Defendants, Wells and Brennan, and attempted to resolve the unauthorized trades. [Wehrs] further alleged that he contacted the Defendant, [NAC], and demanded that the stock be sold to prevent any more unauthorized trades.
>
> ***
>
> Wehrs has alleged that during the period of communications, the [Cyberonics] stock at issue continued to decrease in value, and the clearing house [NAC] began to sell the stock on margin call. Thereafter, [Wehrs] contacted Defendant, [NAC], and demanded that the stock be sold, yet [NAC] refused to sell the stock. [Wehrs] further alleged that the majority of the [Cyberonics] shares held in [Wehrs's] account have been sold on margin by [NAC] in breach of the fiduciary duties owed to [Wehrs].

Response at 2-3.

NAC argues in its motion to dismiss that because clearing brokers do not owe a fiduciary duty to the customers of an introducing broker, Wehrs's claim that it breached a fiduciary duty to him should be dismissed. It states that "NAC is a clearing firm. As such, its customers are other broker dealers for whom NAC purchases and sells securities, not individual investors such as [Wehrs]. Because of its status as a clearing broker, NAC does not interact directly with investors. . . . Because a clearing firm must take its order from the primary broker dealers, not individual investors such as [Wehrs], NAC did not serve in fiduciary capacity to [Wehrs]." Motion at 1-2.

Wehrs responds that NAC breached a fiduciary duty to him through its involvement in the purchases made by Benson York, its refusal to sell his stock upon his request, and the sale of the stock on margin call. Wehrs also argues that a clearing broker may be liable for the manipulative or deceptive schemes of an introducing broker under *Faturik* v. *Woodmere Sec., Inc.*, 442 F. Supp. 943, 946 (S.D.N.Y. 1977).

New York courts have consistently held that absent extenuating circumstances, a clearing broker does not have a fiduciary duty to an individual investor. *Press* v. *Chem. Inv. Servs.*

5

*Corp.*, 166 F.3d 529, 536 (2nd Cir. 1999); *Rozsa* v. *May Davis Group, Inc.*, 152 F. Supp. 2d 526, 531-32 (S.D.N.Y. 2001); *Greenberg* v. *Bear Stearns & Co.*, 1999 WL 642859 (S.D.N.Y. Aug. 23, 1999); *Katz* v. *Financial Servs. Corp.*, 794 F. Supp. 88, 93-94 (S.D.N.Y. 1992) ("a clearing broker performing merely its processing function cannot be held liable for fraudulent misrepresentation made by an introducing broker to that introducing broker's customers . . . ."); *Strategic Income Fund, L.L.C.* v. *Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293 (11th Cir. 2002); *Rivera* v. *Clark Melvin Sec. Corp.*, 59 F. Supp. 2d 297, 302 (D.P.R. 1999) (summarizing cases); *see also* Daphna Abrams, *A Second Look at Clearing Firm Liability*, 67 Brook. L. Rev. 479, 490-93 (2001).

Wehrs has not alleged any circumstances that could be found "extenuating" under the existing law. In *Rozsa*, the court cited examples of what might constitute extenuating circumstances: where a clearing firm "actively engaged ... in creating fraudulent trading losses rather than acting as a mere conduit" and "the existence and violation of a customer agreement" between the investor and the clearing broker. 152 F. Supp. 2d at 532 (citations omitted). Here, Wehrs has alleged only that after the contested sales occurred, he asked NAC to sell his stock and NAC said that it could not do so. Later, apparently when Wehrs's account fell below its maintenance margin, NAC sold his stock on margin call. These allegations do not suffice to state a claim that NAC had and breached any fiduciary duty to Wehrs.

To defend his case for liability, Wehrs point out that the *Faturik* court denied a clearing broker's motion to dismiss under similar circumstances. 442 F. Supp. At 946. That court said, "clearing brokers may be liable for the manipulative or deceptive scheme of trading brokers" subject to either (1) "proof of knowledge and assistance sufficient to establish aider or abettor

liability" under § 10(b) of the Securities Exchange Act of 1934; or (2) "proof of an actionable violation of Rule 405" of the New York Stock Exchange. *Id.* Wehrs implies that NAC should be liable in this case because it had knowledge that there was "churning" of his stock account.[4] Thus he contends that NAC may have had knowledge beyond that of a clearing broker performing only a processing function.

In denying the defendant's motion to dismiss, the *Faturik* court first explored the defendant's possible liability as an aider or abettor. *Id.* at 945. Such liability is impossible here because the Supreme Court has since found that no private right of action exists against aiders and abettors. *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994).

The *Faturik* court next explored the defendant's responsibilities under Rule 405 of the New York Stock Exchange, the "Know-Your-Customer-Rule." 442 F. Supp. at 945-46. Rule 405 requires members of the Exchange to "[u]se due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization." *Spicer* v. *Chicago Bd. of Options Exchange, Inc.*, 977 F.2d 255, 264 n.9 (7th Cir. 1992). The rule also imposes an obligation on members to "supervise diligently all accounts handled by the firm." *Faturik*, 442 F. Supp. At 945.

In finding that the plaintiff had stated a cause of action, the *Faturik* court relied on facts in the complaint suggesting "that there were irregularities or suspicious circumstances putting

---

[4] "Churning is the excessive trading of an account by a broker to general additional commissions." *Dyer* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 928 F.2d 238, 241 (7th Cir. 1991).

7

[the defendant] on notice and indicating a possible violation of Rule 405." *Id*. at 946.  The facts showed that the defendant broker had used the defendant clearing house to sell 22 of 25 of the plaintiff's stocks in one day.  *Id*. at 944.  In the following weeks, numerous sales and purchases were made in the plaintiff's account, resulting in increased commissions, lost dividends, and declines in the price of stocks in plaintiff's account.  *Id.*

Whether or not NAC might be liable for a violation of Rule 405, Wehrs has not pled such a violation in his complaint; he has pled a breach of fiduciary duty.[5]  Wehrs is the master of his own complaint, and the court will not endeavor to research what claims he could have made.  *See Mizuho Corp. Bank (USA)* v. *Cory & Assoc., Inc.*, 341 F.3d 644, 651 (7th Cir. 2003).  Therefore, Count V and NAC must both be dismissed without prejudice.

## V.      Conclusion and Order

---

[5] Although neither party has raised the issue, the court notes that NAC's potential duty under Rule 405 depends on the existence of a private claim for relief.  The Seventh Circuit has found that although not every violation of Exchange rules is per se actionable, a violation of Rule 405 can, in some cases, create a private claim for relief.  *Faturik*, 442 F. Supp. at 946 (citing *Buttrey* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135 (7th Cir. 1969)).  More recently, however, other courts have found no private right of action under Rule 405.  *See, e.g., Craighead* v. *E.F. Hutton & Co., Inc.*, 899 F.2d 485, 493 (6th Cir. 1990) ("NYSE Rule 405 does not imply a private right of action..."); *Carrott* v. *Shearson Hayden Stone, Inc.*, 724 F.2d 821, 823 (9th Cir. 1984) (per curiam) (no cause of action under NYSE Rule 405); *Thompson* v. *Smith Barney, Harris & Upham Co., Inc.*, 709 F.2d 1413, 1419 (11th Cir. 1983) (no merit to "contention that there is a private cause of action under the federal securities laws for violation of ... the ... 'know your customer' rule ..."); *Frota* v. *Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1190 (S.D.N.Y. 1986); *see also Baselski* v. *Paine, Webber, Jackson & Curtis, Inc.*, 514 F. Supp. 535, 542 (N.D. Ill. 1981) (discussing *Buttrey*, 410 F.2d at 142).

For the foregoing reasons, NAC's motion to dismiss [#16] is granted.  Count V is dismissed without prejudice, as is NAC as a defendant in this action.


Dated: March 18, 2008          ENTER:_____
                                       JOAN HUMPHREY LEFKOW
                                       United States District Judge