# In the
# United States Court of Appeals
## For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 11-3369

WILLIAM R. WEHRS, JR.,

*Plaintiff-Appellee*,

*v.*

KEVIN WELLS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 3312—**Joan Humphrey Lefkow**, *Judge*.

ARGUED APRIL 13, 2012—DECIDED AUGUST 8, 2012

Before BAUER, KANNE, and TINDER, *Circuit Judges*.

KANNE, *Circuit Judge*. In 2007, William Wehrs filed a complaint against his stock broker, Kevin Wells, alleging he violated various federal securities and state laws by executing unauthorized trades on Wehrs's account, resulting in significant losses. Wells never answered the complaint or appeared in court, and a default judgment was entered against him. Subsequently, Wells filed a motion to vacate the default judgment, which was

Case: 1:07-cv-03312 Document #: 168 Filed: 08/30/12 Page 2 of 14 PageID #:807
Case: 11-3369　　Document: 00711832164　　Filed: 08/30/2012　　Pages: 14

2　　　　　　　　　　　　　　　　　　　　　　　No. 11-3369

granted with respect to damages but denied with respect to liability. The parties then agreed to submit the issue of damages to the district court by motion for summary judgment, which the court granted in favor of Wehrs. On appeal, Wells argues that the district court abused its discretion by denying his motion with respect to liability and not permitting him to file an answer to the complaint, as well as by considering damages that he did not proximately cause. We find no merit to Wells's challenges, and accordingly affirm the district court's judgment.

## I. BACKGROUND

Because the district court entered a default judgment against Wells, we take as true the facts of the complaint. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 605 (7th Cir. 2007). Wehrs was a client of the stock brokerage firm Benson York Group, Inc., where Wells worked as a stock broker. In 2005, Wells recommended shares of Cyberonics, Inc. (CYBX), a medical technology company. Wehrs was persuaded by the recommendation, and on June 23 he authorized Wells to purchase 4,000 shares on margin at a price of $43.75 per share, with a $7,500 stop-loss order.

Wells deviated from this order, however, and on June 24 instead purchased 4,100 shares on margin at a market price of $46.00 per share, for a total purchase price of $192,659 after commission. On June 27, Wells sold the stock for $43.33 per share (crediting Wehrs's account $181,650)—it is not clear whether or not this sale was

made pursuant to a stop-loss order—before inexplicably repurchasing another 4,100 shares that same day (charging Wehrs's account $190,735 after commission). Wehrs maintains that neither the initial purchase of CYBX, which had a higher price per share and quantity than he specified, nor the subsequent repurchase of the shares were authorized.

Wehrs discovered the unauthorized transactions, along with the hefty commission fees charged to his account, and tried in vain to contact Wells and his supervisor, Kevin Brennan. After leaving several messages, Wehrs finally managed to reach Wells by phone on July 15. Wells told him not to worry about any temporary losses to his account because the Food and Drug Administration had just approved one of Cyberonics's products. The price of the stock would jump to $65 in just a few days, Wells maintained, and Wehrs would profit handsomely. Although these assurances may have temporarily abated Wehrs's concerns, the stock price did not increase, and instead began a slow and steady decline. As the price dropped, shares were sold at a loss in order to satisfy the maintenance margin. Wehrs continued to call Wells and Brennan about the losses, but he was repeatedly assured that all of the commissions charged to his account would be reversed, any stock sold on margin would be repurchased, and CYBX would eventually increase in value. Although the commissions were eventually refunded, the stock's price never recovered. All but eighty-five shares were eventually sold pursuant to margin calls, crediting Wehrs's account $133,855. The remaining eighty-five shares were sold for $1,398 on July 2, 2009.

On June 14, 2007, Wehrs filed suit against Wells, Brennan, and Benson York alleging federal securities law violations, and state law claims for fraud, negligence, and breach of fiduciary duty. The case was stayed from May 30, 2008, to June 3, 2009, while the defendants appealed the district court's denial of their motion to compel arbitration. That appeal was eventually voluntarily dismissed by the defendants. Following the dismissed appeal, the defendants' attorney filed a motion to withdraw as counsel, which was granted by the district court on August 13, 2009. Subsequently, the defendants did not hire another attorney and did not answer the complaint or appear in court. The district court accordingly declared the defendants in default on September 10, 2009. After a prove-up hearing to establish the amount of damages, the court entered default judgment on September 17, 2009, in favor of Wehrs for $236,837.75.

Represented by new legal counsel, Benson York and Brennan filed a motion to vacate the default judgment, which the district court granted on November 17, 2009. Wells, representing himself, filed a separate motion to vacate the default judgment under Rule 60(b) of the Federal Rules of Civil Procedure on December 9, 2009. In that motion, Wells also requested that the court grant him seven days to file an answer to the complaint.[1] Without specifically addressing his request to file an answer,

---

[1] In his reply brief in support of the motion, Wells modified this request to "a reasonable period" to answer Wehrs's anticipated amended complaint.

No. 11-3369 5

the district court denied Wells's motion to vacate the default judgment as to liability, finding that he did not state a meritorious defense to the complaint, but permitted him to rebut the amount of damages. Brennan and Benson York eventually settled with Wehrs, leaving Wells as the lone defendant remaining in the case.

Wells retained counsel, and the parties agreed to submit the issue of damages to the court by motion for summary judgment. At summary judgment, the district court held that the allegations contained in the original complaint failed to state a claim under federal securities law. Nevertheless, the court determined that it was proper to retain jurisdiction over the supplemental state law claims, and found that the allegations in the complaint supported claims for breach of fiduciary duty and negligence. The district court then calculated the damages caused by the unauthorized purchase and repurchase of CYBX stock and granted summary judgment in Wehrs's favor, finding Wells liable for $49,861. Wells filed this timely appeal.

## II. ANALYSIS

Wells presents three arguments on appeal, although we have grouped together the first two for ease of analysis. First, he contends that the district court abused its discretion in denying his motion to vacate the default judgment with respect to liability. Raising a related point, he argues that the court should have first granted him leave to file an answer to the complaint before ruling on his motion. Finally, Wells claims the district court abused its discretion at summary judg-

ment by considering damages that he did not proximately cause. We address each of these arguments in turn.

*A. Motion to Vacate the Default Judgment*

Wells first challenges the district court's denial of his motion to vacate the default judgment as to liability. We review the district court's decision only for an abuse of discretion. *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). Relief from a final judgment may be granted pursuant to Rule 60(b) under exceptional circumstances, and we have characterized the district court's considerable latitude in making its decision as "discretion piled on discretion." *Swaim v. Moltan Co.*, 73 F.3d 711, 722 (7th Cir. 1996). We apply a deferential standard of review because the district court is "the forum best equipped for determining the appropriate use of default to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not in an environment of limited judicial resources." *Id.* at 716 (quotation marks and citation omitted). In order to have a default judgment vacated, the moving party must demonstrate: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007).

The district court found that Wells was able to meet the first two requirements because he took quick action to correct the default, and had good cause due to excusable neglect—Wells asserted that his withdrawn counsel did not provide him notice of the date by which

No. 11-3369 7

he had to file a responsive pleading. Nevertheless, the district court denied Wells's motion because he did not set forth a meritorious defense. In his motion to vacate the default judgment, Wells stated that he "emphatically den[ies]" the claims made in Wehrs's complaint because "all transactions were authorized." Wells also maintained that after Wehrs accused him of making unauthorized trades, he notified Brennan, who then took over the account. Finally, Wells's motion disputed the amount of damages set forth in the complaint, attaching as an exhibit a transaction history of Wehrs's account showing that commissions charged for the allegedly unauthorized transactions were reversed. The district court found Wells's broad denial insufficient to state a meritorious defense because he did not specifically deny the complaint's allegations that he purchased, sold, and repurchased the shares of CYBX without permission. Indeed, the court found that Wells implicitly admitted the complaint's allegations when contesting the amount of damages.

Wells primarily argues that the district court abused its discretion because the motion set forth a meritorious defense: the transactions were authorized. We disagree. A meritorious defense need not, beyond a doubt, succeed in defeating a default judgment, but it must at least "raise[] a serious question regarding the propriety of a default judgment and . . . [be] supported by a developed legal and factual basis." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). In his motion to vacate the default judgment, Wells makes only a single conclusory statement that the transactions were authorized. We have consistently held that such a general denial of the complaint's

allegations, without any factual support, is insufficient to state a meritorious defense. *E.g., Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) ("[A] meritorious defense requires more than a 'general denial' and 'bare legal conclusions.'"); *accord Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) ("simple assertions unsupported by specific facts or evidence" failed to establish meritorious defense); *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) ("conclusory denials" insufficient to raise meritorious defense). Moreover, as the district court correctly observed, the fact that the commissions charged to Wehrs's account were reversed undercuts Wells's contention that the transactions were authorized.

Neither did the district court abuse its discretion in denying Wells leave to answer the complaint. Wells maintains that he would have provided the necessary factual support to establish a meritorious defense in an answer to the complaint, if only the district court had granted him leave to do so. But this argument is illogical. It makes little sense to claim that a district court cannot rule on a motion to vacate a default judgment without first granting a defendant leave to file an answer, when the failure to file an answer is *the reason* default judgment was entered.[2]

---

[2] After ruling on Wells's motion to vacate the default judgment, the district court later permitted Wehrs to file two amended complaints. In the "summary of argument" and "conclusion" sections of his opening brief, Wells states that the district judge
(continued...)

Moreover, Wells was free to raise specific facts to support his purported meritorious defense in his motion to vacate the default judgment. He did just that regarding his claim that the complaint exaggerated Wehrs's financial losses, attaching a transaction history that revealed some charges to Wehrs's account had already been refunded. But Wells provided nothing of the sort regarding his contention that the transactions were authorized. Wells also could have attached a proposed answer as an exhibit to the motion, to provide some support for his threadbare assertions. *See Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988) (district court's denial of Rule 60(b) motion was abuse of discretion because it did not consider meritorious defense established in defendant's proposed answer, exhibits, and counterclaim).

---

[2] (...continued)
"further abused her discretion in denying Wells' Motion for Leave to File An Answer to Wehrs' subsequently filed Second Amended complaint." (Appellant's Br. at 28.) To the extent Wells is also challenging the district court's denial of any subsequent request to file an answer, this argument is waived. The lone sentences in his summary of argument and conclusion sections, lacking any citation to governing law, are insufficient to raise adequately an issue on appeal. *See United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008) ("Unsupported and undeveloped arguments . . . are considered waived."); *see also Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 795 (7th Cir. 1989) (argument unsupported by any authority and raised in "mere single line in the 'summary of argument' section" of opening brief is waived).

He did not do so, and this left the district court with only the conclusory statements contained in Wells's motion when considering whether he raised a meritorious defense. And although Wells was appearing *pro se*, this does not excuse the fact that he provided no specific facts or evidence to support his general denial of the complaint's allegations. *Cf. Jones*, 39 F.3d at 163 (noting that although *pro se* litigants benefit from various procedural protections, they are "not entitled to a general dispensation from the rules of procedure or court imposed deadlines").

## B. Damages

The district court carefully calculated Wehrs's damages, considering the total amount charged to Wehrs's account as a result of the purchase and repurchase of the CYBX shares. The court then deducted from this total: (1) refunded transaction fees and sales commissions; (2) credits for the shares of CYBX sold, including those shares sold pursuant to margin calls; (3) the $7,500 stop-loss amount; and (4) $27,499, the settlement amount agreed to by the other defendants. The district court accordingly found Wells liable for $49,861 in damages.

Wells does not take issue with the district court's calculations. Instead, he argues that the court abused its discretion by not considering evidence that he did not proximately cause a large portion of the damages. Specifically, Wells contends he should not be held liable for any

losses that occurred after June 27, 2005, the date that Wehrs discovered the unauthorized transactions. Because Wehrs could have sold his stock on this date, Wells posits, Wehrs should have mitigated his damages, rather than holding the stock as the price continued to fall. But because the default judgment entered against Wells precluded him from raising this argument at summary judgment, we disagree.

Generally, we will not reverse a damages award in a default judgment unless it is clearly excessive. *e360*, 500 F.3d at 602. "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *Id.* Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989); *accord* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2688, at 58-59 (3d ed. 1998 & Supp. 2012) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Thus, "[d]amages must be proved unless they are liquidated or capable of calculation." *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990). Because a plaintiff must ordinarily prove damages, the defaulting party may raise the issue of causation as it relates to the calculation of damages. 10 *Moore's Federal Practice*, § 55.32[1][c] (3d. ed. 2012) ("The rule that the claimant must prove the amount of damages may also

extend to the element of causation. While liability is admitted, the defaulting party is liable only for those damages that arise from the acts and injuries that were pleaded."); *see Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973) ("The outer bounds of the recovery allowable are of course measured by the principle of proximate cause. The default judgment did not give TWA a blank check to recover from Toolco any losses it had ever suffered from whatever source.").

Wells relies heavily on the Second Circuit's broad language in *Hughes* to argue that because Wehrs could have mitigated his damages, Wells did not proximately cause a significant amount of the financial losses suffered. But Wells misconstrues the Second Circuit's decision, ignoring the critical difference between proximate cause as it relates to liability and proximate cause as it relates to damages after a default judgment has been entered. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992) (finding a categorical distinction between proximate cause "as it pertains to the assignment of liability in the first instance," and proximate cause "as it relates to the ministerial calculation of damages" after a default judgment). Within the context of a default judgment, proximate cause "presumes that liability has been established, and requires only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* Thus, a defaulting landlord whose faulty sprinkler system caused a warehouse fire could not

argue he did not proximately cause all of the fire's damages by pointing to the plaintiff's comparative negligence in causing the fire—that argument would contest settled issues of liability. *Id.* In contrast, a plaintiff that lost $3,000 in a defaulting defendant's fraudulent investment scheme could not recover for, among other things, money spent on an abortion she claimed was needed because "she did not have the money to raise a child due to her monetary loss"—the money spent on an abortion bore little relation to the complaint's allegations, and did not naturally flow from the injuries pled. *Wu v. Ip*, No. C 93-4467, 1996 WL 428342, at *1 (N.D. Cal. July 25, 1996) (unpublished).

To permit Wells to argue that Wehrs should have sold his shares of CYBX at an earlier date to mitigate his damages would allow Wells to contest his liability, rather than the extent of the damages suffered from the injuries pled. This he may not do; a defaulting party "has no right to dispute the issue of liability." 10 *Moore's Federal Practice*, *supra*, § 55.32[1][a]. As the district court duly noted, the duty to mitigate damages is an affirmative defense, and Wells waived his right to this defense by not filing a responsive pleading to the complaint. After a default judgment was entered against him, Wells could not raise the waived defense while contesting damages under the guise of proximate cause. Accordingly, the district court did not abuse its discretion in determining damages at summary judgment.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.